IN THE DISTRICT COURT FOR THE VIRGIN ISLANDS
BANKRUPTCY DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN RE: | **Case No 3:11-30011 MFW** |
| DENNIS ALAN CUNNING, | **Chapter 7** |
| Debtor. | **Hearing Date: 3/15/12  10:00 a.m. AST** |
| | **Response Date: 3/8/12** |

# EXHIBIT A

# COMPLAINT, WITHOUT EXHIBITS, FILED ON DECEMBER 16, 2011

## UNITED STATED DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VLADIMIR KUSHNIR, individually and as Trustee of the V-4 Management LLC Defined Benefit Pension Plan & Trust 334 Carson Terrace Huntingdon Valley, PA 19006 | : |
| and | : CIVIL ACTION |
| V-4 Management, LLC, 337 Basswood Circle Langhorne, PA 19053, | : CASE NO. |
| Plaintiffs | : JURY TRIAL DEMANDED |
| v. | : |
| AVIVA LIFE & ANNUITY COMPANY 7700 Mills Civic Parkway West Des Moines, Iowa 50266-3862 Defendant | : COMPLAINT |

Plaintiffs, Vladimir Kushnir and V-4 Management, LLC, by and through their

undersigned counsel, Foehl & Eyre, P.C., hereby complain of Defendant, Aviva Life &

Annuity Company, as follows:

### PARTIES

1.     Plaintiff Vladimir Kushnir ("Kushnir") is an individual and citizen of the

Commonwealth of Pennsylvania, residing at 334 Carson Terrace, Huntingdon Valley, PA

19006.

2.      Kushnir asserts claims herein in his individual capacity and in his capacity as Trustee of the V-4 Management, LLC Defined Benefit Pension Plan and Trust (the "V-4 Plan"), described in more detail below.

3.      Plaintiff V-4 Management, LLC is a limited liability company organized and certificated in the Commonwealth of Pennsylvania with a principal place of business at 337 Basswood Circle, Langhorne, PA 19053.

4.      Defendant Aviva Life and Annuity Company ("Aviva") is an Iowa insurance company, with a principal place of business at 7700 Mills Civic Parkway, West Des Moines, Iowa 50266-3862.

5.      Aviva is successor by merger to Indianapolis Life Insurance Company ("Indianapolis Life"), effective September 30, 1998, and successor insurer on the whole life insurance policy at issue herein (the "Kushnir Policy," described below), initially issued by Indianapolis Life.  References hereinafter to "Defendant" shall refer to Aviva and its predecessor, Indianapolis Life.

6.      At all times relevant hereto, Defendant has been engaged in the business of selling life insurance products and services to individual consumers, including in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

7.      This is an action for declaratory relief pursuant to 28 U.S.C.A. §2201 to enforce a whole life insurance policy (the "Kushnir Policy," described below); and, in addition or in the alternative, to obtain damages and related relief against Defendant for breach of contract, for violation of Pennsylvania's insurer bad faith law (42 Pa.C.S.A. § 8371), for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection

2

Law (73 P.S. § 201-1 *et seq*) ("UTPCPL"), and/or for common law fraud in the marketing, sale and administration of the Kushnir Policy by Defendant.

8.     Not asserted herein, and expressly reserved, are distinct claims that Plaintiffs may assert against Defendant and/or other parties named or to be named in an action commenced by Writ of Summons filed on June 24, 2011 in the Philadelphia County Court of Common Pleas, at June Term 2011, No. 2413 (the "Writ of Summons Action"), for, *inter alia*, damages incurred as a result of the illegal and abusive character of the "412i plan" funded by the Kushnir Policy.

9.     This court has subject matter jurisdiction in this matter pursuant to 28 U.S.C.A. §1332, as an action between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

10.     Defendant is subject to personal jurisdiction in this court in that, at all times relevant hereto, Defendant regularly conducted business in the Commonwealth of Pennsylvania, including within the Eastern District of Pennsylvania, maintaining substantial and continuous contacts within this Commonwealth and District and engaging in specific acts and omissions giving rise to the claims asserted herein.

11.     Venue is proper in this court pursuant to 28 U.S.C. §1391(a)(1) and (2).

## FACTUAL BACKGROUND

### 1.     Marketing and Sale of the Kushnir Policy by Defendant and its Agents.

12.     For some time before and after 2002, Defendant, as Indianapolis Life, marketed insurance products used to fund so-called "412i plans."

13.     412i plans are insurance-funded defined benefit pension plans, named for

a section (28 U.S.C. §412i) of the Internal Revenue Code ("IRC") that authorizes and

regulates the Federal income tax benefits of such plans.

14.     Among the 412i products marketed by Defendant was a whole life

insurance policy called a Vista PenPro ("PenPro") policy.

15.     The "Kushnir Policy" at issue herein is a PenPro policy, identified as

Indianapolis Life Policy No. 000100098974, issued by Defendant effective February 23,

2003, with a death benefit of $4,614,517.00, naming Kushnir as the insured and the V-4

Plan as the initial owner.

16.     The Kushnir Policy was marketed and sold to Kushnir as part of an

investment and tax planning strategy that would utilize the Policy to fund a 412i plan

established for the benefit of Kushnir contemporaneously with the issuance of the

Kushnir Policy.

17.     The creation of a 412i plan and use of Defendant's PenPro product were

recommended to Kushnir by investment, tax and pension consultants employed by or

otherwise affiliated with a group of companies known as "Pension Professionals."

18.     These consultants included at least five authorized sales agents of

Defendant: a principal of Pension Professionals named Dennis Cunning ("D.Cunning"),

Jeffery Cunning, Roger K. Fuller ("Fuller"), Todd Nelson ("Nelson"), and Scott Ridge

("Ridge").

19.     These consultants also included two other individuals, T.J. Agresti

("Agresti") and David Strong ("Strong"), who (on information and belief) were also

4

agents and/or collaborating with Pension Professionals and Defendant in the promotion of 412i plans and associated insurance products.

20.     On information and belief, D.Cunning and his companies, Pension Professionals, had a close working relationship with Defendant and had collaborated with Defendant in the design and promotion of insurance products like the PenPro policy to fund 412i plans.

21.     On information and belief D.Cunning, Fuller, Ridge, J.Cunning and Nelson received commissions from Defendant for the sale of the Kushnir Policy—a fact not disclosed or known to Plaintiffs until July 26, 2010, when a complete copy of the Policy and Policy Application was produced by Aviva.

22.     Defendant knew of the efforts of Pension Professionals and its associates, D.Cunning, Fuller, Agresti, J.Cunning, Nelson, Strong and Ridge, to promote 412i plans and intended, supported and encouraged such efforts in order to market its own insurance products, like the PenPro product, to consumers like Kushnir.

23.     At all times relevant hereto, Pension Professionals and its associates, D.Cunning, Fuller, Agresti, J.Cunning, Nelson, Strong and Ridge (referred to collectively herein as "Defendant's Agents") were authorized agents of Defendant acting within the scope of their actual and apparent authority as such.

24.     Certain of Defendant's Agents, on information and belief, Agresti, Nelson, Strong and/or Fuller, came to Philadelphia twice in 2002 to promote the 412i plan concept and solicit Kushnir's purchase of insurance—once to meet with Kushnir's accountants and second time to meet with Kushnir.

5

25.     In these meetings, the Defendant's Agents provided Kushnir with a written summary of the recommended 412i investment strategy (the "412i Plan Summary"), a true and correct copy of which is attached hereto as Exhibit "1."

26.     On information and belief, the 412i Plan Summary was prepared by D. Cunning and Pension Professionals and intended by them for use by the Defendant's Agents to promote the 412i investment strategy and sale of insurance for which all or some of them would earn commissions.

27.     D. Cunning and Pension Professionals, assisted by Fuller and Ridge, would eventually take the lead in implementing the 412i investment strategy for Kushnir, including (without limitation) recommending and/or assisting Kushnir in the following:

> a. Applying for and securing the issuance of the Kushnir Policy by Defendant, to be owned by the V-4 Plan pending the exercise of certain purchase and conversion options by Kushnir;
>
> b. Establishing the V-4 Plan, for the purpose of securing the benefits of a defined benefit pension plan under IRC §412i for Kushnir;
>
> c. Administering the V-4 Plan and assuring compliance with applicable legal and tax filings for the Plan and Kushnir; and
>
> d. Advising Kushnir concerning his rights and obligations under the V-4 Plan and Kushnir Policy, including concerning the payment of premiums and the exercise of his rights to purchase and/or convert the Kushnir Policy to maximize his personal tax and investment benefits.

28.     In connection with the application for and issuance of the Kushnir Policy, Defendant, through Pension Professionals and other of Defendant's Agents, provided Kushnir with certain Policy Illustrations, including two dated October 16, 2002 and February 6, 2003, to illustrate the Kushnir Policy to Kushnir.  Copies of the October 16, 2002 and February 6, 2003 Policy Illustrations are attached hereto as Exhibits "2" and "3," respectively.

29.     In connection with his application for the Kushnir Policy, and as a condition of issuance of same, Defendant required Kushnir to sign and return written acknowledgment of the October 16, 2002 and February 6, 2003 Policy Illustrations.

30.     Consistent with the 412i Plan Summary (Exhibit "1" hereto), the Policy Illustrations reflected the intention and expectation of both Kushnir and Defendant that Kushnir would make five out-of-pocket premium payments of $190,118.10 each, one in each of the first five years of the Policy, with the annual premium in at least each of the next six years (that is, in years 6 through 12 of the Policy) being paid from the Policy's accumulated cash value or loans against same, in either case without further out-of-pocket premium payments required so long as cash values were sufficient for such purposes.

31.     In all other written and oral explanations of the Kushnir Policy to Plaintiffs, both before and after the issuance and delivery of the Policy, Defendant and its agents consistently represented that the Policy would require only five out-of-pocket premium payments of $190,118.10 each in years one through five of the Policy, with the annual premiums in at least each of the next six years (that is, in years 6 through 12 of the Policy) being paid from the Policy's accumulated cash value or loans against same.

7

32.    The Policy Illustrations also reflected what is sometimes referred to as "springing value" feature of policies like the Kushnir Policy used to fund 412i plans of the sort designed and marketed by Defendant's Agents.

33.    This "springing value" feature was the result of the application of charges referred to as "surrender charges" to the cash surrender value, which "surrender charges" would remain high (at $641,417.86) during the first five years of the Kushnir Policy, but decline sharply thereafter (by $128,283.57 annually) until eliminated in year ten of the Policy, resulting in a correspondingly sharp increase of the Policy's cash surrender value in and after year six.

34.    This "springing value" feature was the reason behind the timing of the "buy-out" and "exchange" options reflected in the 412i Plan Summary (Exhibit "1" hereto), referring to the expected purchase of the Policy out of the V-4 Plan by Kushnir in year six of the Policy and exchange or conversion to another insurance product in year eight.

35.    In reliance on the foregoing, and other representations by Defendant and its agents, Kushnir proceeded to apply for and purchase the Kushnir Policy as described further below.

**2.    Irregularities in the Issuance of the Kushnir Policy.**

36.    Attached hereto as Exhibit "4" is a copy of the Kushnir Policy as delivered to Kushnir on or after March 11, 2003, including the Policy Declaration and Provisions, the Policy Application dated November 7, 2002, and two Amendments to the Policy Application dated March 5 and March 7, 2003, respectively.

8

37.     As described below, the completion of the Policy Application and issuance of the Kushnir Policy were fraught with irregularity, the extent of which was not known to Plaintiffs until on or after July 26, 2010, when Defendant produced a more complete copy to Plaintiffs' counsel.

38.     For example, the Defendant's Agents procured Kushnir's signature to a blank Policy Application on November 7, 2002, and much of the information on the Policy Application form included in Exhibit "4" was filled in by others, presumably Ridge or Fuller, after Kushnir signed the form, and not returned to Kushnir until on or after March 11, 2003, when he received his bound copy of the Policy and Application.

39.     While the Policy Application suggests it was signed in the presence of agent Fuller in Arizona, Kushnir has never been to Arizona and signed the blank Policy Application in Philadelphia, Pennsylvania.

40.     The Policy Application form was apparently approved for use in connection with a Policy to be issued in the State of Arizona, while the Policy Illustrations refer to Pennsylvania as the state of issue and the Policy was, in fact, sold and delivered to Kushnir in Pennsylvania.

41.     The bound copy of the Kushnir Policy delivered to Kushnir on or after March 11, 2003 did not include page 5 of the Policy Application—the "Agent's Report"—which was never seen by Plaintiffs until production of the more complete file by Aviva on July 26, 2010. A copy of page 5 of the Policy Application, found in the Aviva file (labeled Aviva 277)[1] is attached hereto as Exhibit "5" and discloses (for the first time to Plaintiffs) that commissions were paid to D.Cunning, and Fuller.

---

[1] The labels, "Aviva 1," etc. were added by Plaintiff's counsel to identify the documents as produced by Aviva on July 26, 2010.

42.     The bound copy of the Kushnir Policy returned to Plaintiffs on or after
March 11, 2003 was also missing pages FOUR through FOURTEEN of the Policy
Provisions—containing material provisions concerning premium payment, lapse and
reinstatement (§4), conversion rights (§5), policy values and loans (§6) and transfer of
ownership (§7).  Attached hereto as Exhibit "6" are copies of the missing pages of the
Policy Provisions (labeled Aviva 10 – 19) from the file produced by Aviva on July 26,
2010.

### 3.     Relevant Terms and Conditions of the Kushnir Policy.

43.     As issued, the Kushnir Policy provided for the payment of annual
premiums in the amount of $190,118.10, with the first payment due on or before the
delivery of the Policy and subsequent payments due on each subsequent anniversary of
the issue date of February 3, 2003.

44.     Consistent with the representations made by Defendant and its agents in
connection with the marketing and sale of the Kushnir Policy, the Policy Provisions
provided at least two options to out-of-pocket premium payments on the Policy:

        a.   The partial surrender of cash values to pay such premiums under
            section 6.6 of the Policy, and

        b.   Premium loans against cash values under sections 4.3 and/or 6.15
            of the Policy.

45.     In accordance with section 6.6 of the Kushnir Policy, Kushnir provided
Defendant with written notice of the Plaintiffs' intention to exercise the option of partial
surrender of the Policy's accumulated cash value in and after year six of the Policy by

10

signing and returning his acknowledgment of the written Policy Illustrations confirming such intention.

46.     Kushnir also elected the automatic premium loan option in accordance with section 4.3 of the Kushnir Policy in that the Policy Application form submitted for the Policy deemed such option exercised unless declined by checking "NO" in section 7 of the Policy Application, and Kushnir did not so decline.

47.     Also, and consistent with the representations made by Defendant and its agents in connection with the marketing and sale of the Kushnir Policy, section 2 of the Policy, as issued, imposed surrender charges in the amount of $641,417.86 during years 1 through 5 of the Policy, declining thereafter until eliminated in year 10—thus incorporating the so-called "springing value" feature into the Policy.

### 4.     Dispute over Terms and Status of the Kushnir Policy.

48.     Between February 3, 2003 and February 12, 2007 V-4 timely paid, on behalf of Kushnir, the first five annual premiums on the Kushnir Policy, in the amount of $190,118.10 each, for a total out-of-pocket premium investment of $950,590.50 in the Policy.

49.     In addition, Plaintiffs have at all times been and are now in compliance with all other material terms and conditions of the Kushnir Policy, entitling them to the full value and benefits of the Policy.

50.     Despite the foregoing, Defendant claims to have placed the Kushnir Policy on "reduced paid up" (or "RPU") status, as of March 27, 2008, for alleged failure of Kushnir to pay the annual premium due on February 3, 2008 (the "Alleged Default").

11

51.     The effect of the RPU status was to reduce the death benefit by some $3.8 million, deprive Kushnir and V-4 of the benefit of the automatic reduction of $641,318 in surrender charges in years six through ten of the Policy, thus depriving the "springing value" feature, and dramatically reducing the cash surrender value and other benefits under the Policy as of February 3, 2008.

52.     Defendant further claims to have provided various notices relating to the Alleged Default in and after February 2008 (the "Alleged Default Notices").

53.     As described below, Plaintiffs were unaware of the Alleged Default and its effect on the benefits under the Kushnir Policy until January 2010, and were unable, despite repeated requests to Defendant, to obtain basic information concerning the Alleged Default and Alleged Default Notices until October 29, 2010.

54.     In September 2009, Defendant's Agents, D.Cunning and Pension Professionals, recommended Plaintiff Kushnir exercise the "buy-out" option under V-4 Plan and Kushnir Policy.

55.     In January 2010, in the course of obtaining information to value the Kushnir Policy for exercise of the "buy-out" option, Plaintiff's valuation expert was advised that the option could not be exercised because the Policy was on RPU status.

56.     Defendant's Agents, D.Cunning and Pension Professionals, immediately assured Plaintiffs the RPU status was an error and that they would obtain prompt reinstatement of full Policy benefits.

57.     For the next six months, Plaintiffs relied on the advice and counsel of Defendant and its agents, D.Cunning and Pension Professionals, to obtain reinstatement of full Policy benefits.

58.     On or about April 29, 2010, on the advice and recommendation of Pension Professionals, Kushnir completed the form attached hereto as Exhibit "7" (the "Premium Authorization Form") re-stating the intention already expressed in the Policy Application and Policy Illustrations to have policy values applied to pay premiums.

59.     On information and belief, the Premium Authorization Form was submitted to Defendant by Pension Professionals with a request for retroactive application of policy values to premiums, but this request was denied.

60.     On or about May 5, 2010, Defendant and its agents, Pension Professionals, represented that Defendant would reinstate the Policy upon completion of a new medical examination by Defendant and, in reliance on this representation and the advice of Pension Professionals, Kushnir completed and submitted to Defendant an application for reinstatement of the Policy (the "Reinstatement Application," a copy of which is attached hereto as Exhibit "8") and cooperated in a medical examination by Defendant's appointed examiner, on May 17, 2010.

61.     By letter dated June 8, 2010 from Defendant's Underwriting Department, Plaintiffs were advised that the Reinstatement Application was denied "due to [Kushnir's] lab results," without further explanation.

62.     Plaintiffs' repeated, subsequent requests for an explanation of why the lab results justified denial of the Reinstatement Application have been ignored by Defendant.

63.     By letter to Defendant dated July 2, 2010 (the "July 2, 2010 Letter," a copy of which is attached hereto as Exhibit "9"), Defendant's own agent, Pension Professionals, requested reinstatement of the Kushnir Policy, specifically emphasizing

13

the intention reflected, *inter alia*, in Defendant's own Policy Illustrations, that policy

values were to be applied to premium payments after year 5.

64.    The July 2, 2010 Letter also noted that neither Kushnir, Pension

Professionals or "the agent" for the Policy (on information and belief, a reference to

Ridge) had received notification of premiums due, RPU status or other correspondence

relating to the Alleged Default, and requested copies of any such communications from

Defendant.

65.    On information and belief, no response was ever received to the July 2,

2010 Letter, nor did Defendant provide any documentation of any notices or

correspondence regarding the Alleged Default as requested by Pension Professionals.

66.    By letter dated July 14, 2010 from Plaintiffs' counsel, Foehl & Eyre, P.C.

(the "July 14, 2010 Demand Letter," a copy of which is attached hereto as Exhibit "10"),

Plaintiffs disputed the Alleged Default and demanded reinstatement of the Kushnir

Policy.

67.    The requests in the July 14, 2010 Demand Letter were repeated in letters

from Plaintiffs' counsel dated July 20 and July 26, 2010, before a response was received

by letter from Defendants' in-house counsel, Christopher McDonald, Esquire, dated July

26, 2010 (the "July 26, 2010 Response Letter," a copy of which, without enclosures, is

attached hereto as Exhibit "11").

68.    Defendant's July 26, 2010 Response Letter refused to reinstate the

Kushnir Policy, contending that Plaintiffs failed to pay the sixth annual premium due on

February 23, 2008.

14

69.     Defendant's July 26, 2010 Response Letter also contended that Defendant had provided proper notice of the premium due and a second notice prior to the end of the grace period under the Policy (the "Alleged Default Notices"), purporting to enclose the "complete policy file…", including the Alleged Default Notices, with the letter.

70.     Contrary to Defendant's July 26, 2010 Response Letter, however, none of the Alleged Default Notices were included in the "complete policy file" enclosed with the letter and neither Plaintiff, nor (on information and belief), servicing agent Ridge, had received such notices.

71.     In any event, contrary to Defendant's July 26, 2010 Response Letter and as alleged above, Plaintiffs did not fail to pay the sixth annual premium payment due on February 23, 2008 because: (i) Kushnir had in fact elected to have policy values applied to the payment of that and subsequent premiums, by electing to surrender cash values in accordance with section 6.6 of the Kushnir Policy and (ii) Kushnir had also elected the option of automatic premium loans in accordance with sections 4.3 and 6.6 of the Policy; and (iii) and there was more than sufficient value in the Policy for those purposes as of and after February 3, 2008.

72.     In September of 2010, after repeated requests for further explanation (including the Alleged Default Notices), Plaintiffs were advised the matter had been referred to Defendant's outside counsel, John T. Clendenin, Esquire ("Clendenin"), for response.

73.     By letter dated October 28, 2010 to Clendenin (the "October 28, 2010 Demand," a copy of which is attached hereto (without enclosures) as Exhibit "12"),

Plaintiffs' counsel repeated the demand for reinstatement, specifically noting (on page 1)

that, in addition to the lack of evidence of the Alleged Default Notices,

> [T]he Policy could not lapse for failure to pay a premium as
> it was always intended that the Net Cash Value of the
> Policy be applied to premiums after year five, and there
> was more than sufficient value to cover all premiums to
> date. The Policy was designed and marketed by
> Indianapolis Life and its agents on this premise, as
> indicated by the enclosed Policy Illustration prepared for
> Mr. Kushnir in connection with his application.

74.    Defendant responded, by email from Clendenin dated October 29, 2010

(the "October 29, 2010 Response," a copy of which is attached hereto (with enclosures)

as Exhibit "13."), again claiming the Policy had lapsed due to failure to pay the sixth

annual premium and enclosing, for the first time to Plaintiffs, the Alleged Default

Notices.

75.    Plaintiffs deny receipt of the Alleged Default Notices prior to receipt of

the October 29, 2010 Response and, in any event, deny their relevance to any Alleged

Default.

76.    To the contrary, as set forth above, Plaintiffs did not fail to pay the sixth

annual premium payment due on February 23, 2008 because: (i) Kushnir had in fact

elected to have policy values applied to the payment of that and subsequent premiums, by

electing to surrender cash values in accordance with section 6.6 of the Kushnir Policy and

(ii) Kushnir had also elected the option of automatic premium loans in accordance with

sections 4.3 and 6.6 of the Policy; and (iii) and there was more than sufficient value in the

Policy for those purposes as of and after February 3, 2008.

77.    Indeed, in addition to the representations of Defendant and its agents in

connection with the marketing and sale of the Kushnir Policy, Defendant—in an In-Force

16

Policy Illustration issued on December 31, 2007—expressly represented, affirmed and acknowledged its own agreement and intention to apply policy values to pay the premium due on February 3, 2008 and thereafter through year 12 of the Policy, and that policy values were sufficient for this purpose. A true and correct copy of this "In-Force Policy Illustration" is attached hereto as Exhibit "14."

## CAUSES OF ACTION

### COUNT I
### Declaratory Relief

78.     Plaintiffs hereby incorporate paragraphs 1 through 77 as though same were fully set forth herein at length.

79.     This Count I sets forth a claim by Plaintiff Kushnir, individually and as Trustee of the V-4 Plan, for declaratory judgment pursuant to Title 28, United States Code, § 2201, for the purpose of determining a question of actual controversy between the parties.

80.     As described above, Defendant issued the Kushnir Policy, effective February 3, 2003, to the V-4 Plan and Kushnir, promising to pay to Kushnir's designated beneficiaries the sum of $4,614,517 upon his death, and to provide other rights and benefits to the V-4 Plan and Kushnir in the meantime.

81.     As represented and sold to Kushnir, the Kushnir Policy required the cash outlay payment of $190,118.10 for each of the first five years, after which time the value of the policy was to be used to pay additional premiums.

82.     The Kushnir Policy provided for the application of policy values to annual premiums by electing to surrender policy values to pay premiums in accordance with

17

section 6.6 of the Policy and/or by electing to take loans against cash values under sections 4.3 and/or 6.15 of the Policy to premiums.

83.     Kushnir properly elected to surrender policy values to pay premiums in and after year 6 in accordance with section 6.6 of the Kushnir Policy, including (*inter alia*) by his written acknowledgement of the intention to do so in the Policy Illustrations, and otherwise in connection with his Policy Application.

84.     Kushnir also properly elected in connection with the Policy Application, the option of automatic premium loans to pay in accordance with section 4.3 of the Kushnir Policy.

85.     V-4, on behalf of Kushnir, paid the required annual premiums by out of pocket payments of $190,118.10 in each of the first five years of the Kushnir Policy.

86.     As a result of the premium payments made in each of the first five years, and the actual earnings under the Kushnir Policy, policy values were more than sufficient on and after February 3, 2008 to fund premium payments under either section 6.6, 4.3 and/or 6.15.

87.     Based on the foregoing, Plaintiffs were at all times current on payment of premiums under the Kushnir Policy.

88.     Defendant's failure and refusal to apply policy values to the payment of premiums in and after year six of the Kushnir Policy was wrongful and in breach of the terms of the Kushnir Policy.

89.     Defendant's declaration of Alleged Default and placement of the Policy of RPU status was wrongful and in breach of the terms of the Kushnir Policy.

90.    In the event it is determined to the contrary that the Kushnir Policy required an out of pocket premium payment in year six and could be deemed to have lapsed for failure to pay same, is it alleged in the alternative that:

    a.    Defendant nonetheless failed to provide proper notice of premium payments due in or after year six of the Policy, notice of failure to make such payments, notice of rights to apply policy values to such premiums and/or notice of rights to reinstate the Policy by late premium payments;

    b.    Defendant, by its conduct and that of its agents, waived and/or should be estopped from asserting the Alleged Default; and/or

    c.    Defendant's assertion of the Alleged Default, placement of the Kushnir Policy on RPU status and failure to reinstate the Policy are unconscionable, contrary to public policy and in breach of the implied covenant of good faith and fair dealing.

91.    As a direct and proximate result of Defendant's above-described wrongful conduct and breaches of the Kushnir Policy, Plaintiffs have suffered or will suffer loss in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor: (i) declaring the Defendant's assertion of lapse and reduction of benefits under the Kushnir Policy on account of the Alleged Default to be wrongful and the Policy to be in full force and effect, retroactive to February 3, 2008; (ii) allowing Kushnir to exercise any and all

19

rights and options under the Policy, including any buy-out and exchange options, without

limitation or adverse consequence due to the delay of exercise since February 3, 2008;

(iii) awarding Plaintiffs counsel fees and costs of the suit; and/or (iv) granting such other

relief as this Court deems equitable and just.

### COUNT II
### Damages for Breach of Contract

92.    Plaintiffs hereby incorporate paragraphs 1 through 91 as though same

were fully set forth herein at length.

93.    This Count II sets forth claims by Plaintiff Kushnir, individually and as

Trustee of the V-4 Plan, for damages caused by Defendant's breach of the Kushnir

Policy.

94.    Defendant breached the Kushnir Policy as set forth above, including by:

    a.  Failing to apply policy values to the premiums due in and after

        year six of the Policy;

    b.  Declaring the Policy lapsed and on RPU status on the basis of the

        Alleged Default;

    c.  Failing to provide proper notice of premiums due, lapse and right

        to make late payment of the premiums due in and after year six;

    d.  Misleading and misrepresenting the terms and status of the

        Kushnir Policy to Kushnir;

    e.  Failing and refusing to reinstate the Policy despite repeated and

        justified demands; and

    f.  Breaching the implied covenant of good faith and fair dealing

        under the Policy.

20

95.     As a direct and proximate result of the foregoing breaches, Plaintiffs have suffered damages in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant (i) for damages in excess of $75,000, together with costs of this suit and/or (ii) such other relief as this Court deems equitable and just.

## COUNT III
### Bad Faith (42 Pa.C.S.A. § 8371)

96.     Plaintiffs hereby incorporate paragraphs 1 through 95 as though same were fully set forth herein at length.

97.     This Count III sets forth claims by Plaintiff Kushnir, individually and as Trustee of the V-4 Plan, pursuant to 42 Pa.C.S.A. §8371 ("§8731"), on account of Defendant's bad faith denial, delay and refusal to reinstate benefits under the Kushnir Policy.

98.     As set forth above, Defendant has wrongfully reduced and denied benefits due Plaintiffs under the Kushnir Policy, benefits.

99.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiffs have suffered damages in excess of $75,000, exclusive of interest and costs of suit, including without limitation the loss, reduction and delay of Policy benefits and the consequent loss of value in the Policy.

100.     Defendant's actions were intentional, reckless and/or so unreasonable so as to constitute actionable bad faith under §8371 entitling Plaintiffs to interest on its claims, damages, punitive damages, attorney fees and costs of suit.

21

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant for damages, including interest, punitive damages, attorneys fees and costs under 42 Pa.C.S.A. §8371, and/or such other relief as this Court deems equitable and just

## COUNT IV
### Violation of UPTCPL

101.    Plaintiffs hereby incorporate paragraphs 1 through 100 as though same were fully set forth herein at length.

102.    This Count IV sets forth additional and alternative claims by Plaintiff Kushnir, individually and in his capacity as Trustee of the V-4 Plan, pursuant to 73 P.S. § 201-1 *et seq*) ("UTPCPL").

103.    Kushnir purchased the Kushnir Policy for personal, family and household purposes, to obtain personal investment, tax, insurance and compensation benefits for himself and his household.

104.    As set forth above, Defendant has engaged in unfair and deceptive trade practices in its administration and enforcement of the Kushnir Policy, in violation of UTPCPL §201-2 (4) (vii), (xiv) and (xxi), including by:

        a. intentionally or recklessly misleading Kushnir and misrepresenting that the Policy was lapsed and on RPU status on account of the Alleged Default while knowing and/or consciously disregarding the true intention of the Policy as sold and issued;

        b. intentionally and/or recklessly failing to explain or disclose material facts and information concerning the Policy, including by failing to disclose all the terms and conditions of the Policy;

    c.  intentionally and/or recklessly withholding and delaying material information concerning the Alleged Default and notices relating to same; and

    d.  engaging in other fraudulent or deceptive conduct in its communications with Plaintiffs concerning the Alleged Default and Kushnir's rights under the Policy for the purpose of discouraging, delaying and/or preventing Kushnir's assertion and realization of those rights.

105.    As a direct and proximate result of the unfair and deceptive trade practices described in the foregoing paragraph, Kushnir has suffered or will suffer actual loss in the form of delay and/or permanent loss of rights and benefits under the Policy, such as the buy-out and exchange options, and attorneys fees and costs.

106.    In the alternative, in the event the Defendant's interpretation of the Kushnir Policy terms is deemed proper and the Policy is deemed to have lapsed, then Defendant has engaged in unfair and deceptive trade practices in the marketing and sale of the Policy to Kushnir, in violation of UTPCPL §201-2 (4) (ii), (iii), (v), (vii), (ix), (xiv) and (xxi), including by:

    a.  intentionally or recklessly misleading Kushnir and misrepresenting the terms of the Policy concerning payment of premiums;

    b.  intentionally or recklessly failing to disclose or adequately explain the Policy provisions concerning payment of premiums and the exercise of rights to apply policy values to premiums;

c.  intentionally or recklessly failing to disclose or adequately explain
Defendant's affiliation with the Defendant's Agents and their
interests in commissions; and/or

d.  other fraudulent or deceptive conduct in the marketing and sale of
the Kushnir Policy, described above, that was likely to, and did in
fact, create confusion and misunderstanding by Kushnir
concerning his rights and benefits under the Policy.

107.    As a direct and proximate result of the unfair and deceptive trade practices
described in the foregoing paragraph, Plaintiffs will have suffered damages in excess of
$75,000, exclusive of interest and costs, including (without limitation) loss in the amount
of the greater of (i) the difference between the value of the Kushnir Policy with full rights
and benefits and its value on RPU status, or (ii) the amount of the premiums paid in
reliance on the foregoing unfair and deceptive trade practices.

108.    Pursuant to UTPCPL §201-9.2, Plaintiff requests an award of treble
damages and attorneys fees as costs.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and
against Defendant for damages in excess of $75,000, treble damages, attorney fees and
costs; and/or such other relief as this Court deems equitable and just..

**COUNT V**
**Common Law Fraud**

109.    Plaintiffs hereby incorporate paragraphs 1 through 108 as though same
were fully set forth herein at length.

110.    This Count V sets forth claims by Plaintiffs for common law fraud based
on Defendant's misrepresentation of the Kushnir Policy, directly and through

24

Defendant's Agents, which misrepresentations were relied upon by Plaintiffs to their detriment.

111.   The claims set forth in this Count V are alleged in the alternative to the claims in the foregoing Counts I through III and in the event that the Defendant's interpretation of the Kushnir Policy to have lapsed for failure to pay the premium on February 3, 2008, is sustained and the Kushnir Policy deemed to have been properly placed on RPU status as of that date.

112.   In such event, it is alleged that Defendant, directly and through Defendant's Agents, has engaged in fraud and deceit in the sale, administration, and enforcement of the Kushnir Policy including by:

      a.  intentionally or recklessly misleading Plaintiffs and misrepresenting the terms of the Policy concerning payment of premiums;

      b.  intentionally or recklessly failing to disclose or adequately explain the Policy provisions concerning payment of premiums and the exercise of rights to apply policy values to premiums

      c.  intentionally or recklessly failing to disclose or adequately explain Defendant's affiliation with the Defendant's Agents and their interests in commissions;

      d.  Intentionally misrepresenting the policy to Plaintiff to entice him to purchase the life insurance policy generating high commissions to the agents and eventually a windfall to the insurance company

when the Policy is put on RPU status after Kushnir has already

contributed $950,590.50 in annual premiums.

e.  intentionally and/or recklessly withholding and delaying disclosure

of material information concerning the Alleged Default and notices

relating to same; and

f.  engaging in other fraudulent or deceptive conduct in its

communications with Plaintiffs concerning the Alleged Default

and Plaintiffs rights under the Policy for the purpose of

discouraging, delaying and/or preventing Plaintiffs' assertion and

realization of those rights.

g.  Engaging in other fraudulent or deceptive conduct in written

communication to Plaintiffs just prior to the alleged lapse in

sending an In-Force Illustration dated December 31, 2007 showing

the values in the policy if the premiums are paid out of the policy

values as expected in the illustration.

113.  Defendant intended for Plaintiffs to rely on the foregoing

misrepresentations and deceitful conduct in order to induce Plaintiffs to purchase the

Kushnir Policy and pay Defendant $950,590.50 in premiums before declaring the Policy

to have lapsed and securing a windfall in profits for itself and its agents.

114.  As a direct and proximate result of the Defendants fraud and deceit,

Plaintiffs will have suffered damages in excess of $75,000, exclusive of interest and

costs, including (without limitation) loss in the amount of the greater of (i) the difference

between the value of the Kushnir Policy with full rights and benefits and its value on

RPU status, or (ii) the amount of the premiums paid for the Policy.

115.   Defendant's conduct was willful, malicious and outrageous, warranting an

award of punitive damages to Plaintiffs.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and

against Defendant for damages in excess of $75,000, punitive damages, attorney fees and

costs, and/or granting such other relief as this Court deems equitable and just.

### COUNT VI
### Rescission

116.   Plaintiffs hereby incorporate paragraphs 1 through 115 as though same

were fully set forth herein at length.

117.   This Count VI sets forth claims by Plaintiffs for rescission of the Kushnir

Policy and return of all premiums paid toward same.

118.   The claims set forth in this Count VI are alleged in the alternative to the

claims in the Counts I through III and in the event that the Defendant's interpretation of

the Kushnir Policy to have lapsed for failure to pay the premium on February 3, 2008, is

sustained and the Kushnir Policy deemed to have been properly placed on RPU status as

of that date.

119.   In such event, it is alleged that the Defendant has engaged in fraudulent

and inequitable conduct, and has been unjustly enriched thereby and to the Plaintiffs'

detriment, including by its receipt of $950,590.50 in annual premiums by means of its

fraudulent, inequitable and unconscionable conduct.

120.   In addition, its is believed and therefore averred that Defendant was not

licensed to market or issue the Kushnir Policy in Pennsylvania and its issuance of the

27

Policy to Kushnir here was accordingly contrary to the laws and public policy of the Commonwealth of Pennsylvania.

121.   These circumstances warrant rescission of the Kushnir Policy and reimbursement of all or a portion of the premiums paid to prevent the unjust enrichment of Defendant.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against Defendant and rescind the life insurance policy, refunding to Plaintiff all or such portion of the money paid toward the policy as the Court determines to be equitable and just.

FOEHL & EYRE, P.C.

12/15/11

By_____

Robert B. Eyre, Esquire
Laurie A. McCarthy, Esquire
27 East Front Street
Media, PA 19063
610-566-5926
rob@foehllaw.com
laurie@foehllaw.com